IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TOMMY BASS, #122 504, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:12-CV-1043-WKW |
| | ) [WO] |
| COI MUNCHIE KEETON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, an inmate incarcerated at the Limestone Correctional Facility in Harvest, Alabama, files the instant civil rights action pursuant to 42 U.S.C. § 1983.[1] The complaint is filed against Warden Gary Hetzel, Correctional Officer Munchie Keeton, Sergeant Joseph Danzey, Classification Specialist Stacy White, Classification Supervisor Sherry Seals, and Psychological Associate Brian Mitchell. Plaintiff complains that Defendant Keeton subjected him to excessive force on October 15, 2012, for which he seeks damages and requests a trial by jury.

Defendants filed a special report and supporting evidentiary materials addressing Plaintiff's claims for relief. Doc. 9. In this filing, Defendants deny they acted in violation of Plaintiff's constitutional rights. Doc. 9. Upon receipt of Defendants' special report, the court issued an order directing Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff that "the court may

---

[1] Plaintiff filed this action while incarcerated at the Easterling Correctional Facility in Clio, Alabama.

at any time thereafter and <u>without notice to the parties</u> (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 10 at 2. Plaintiff did respond to Defendants' report, *see* Docs. 11 & 15, but his response did not demonstrate that there is any genuine issue of material fact in this case. *See* Doc. 10 at 2. As a result, the court will treat Defendants' report as a motion for summary judgment, and resolve this motion in favor of Defendants.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

Plaintiff has failed to demonstrate a genuine dispute of material fact sufficient to preclude summary judgment, as discussed in detail below.

**A. Excessive Force**

On October 15, 2012, at approximately 9:00 a.m., Plaintiff alleges Defendant Munchie Keeton ("Keeton") assaulted him. Plaintiff, who states he is confined to a wheelchair, asserts Keeton "maliciously broke [his] finger . . . just because he felt like doing so." Doc. 1 at 3. Keeton's actions, Plaintiff claims, violated his Eighth and Fourteenth Amendment rights.[2] Doc. 1 at 3.

Defendants' evidence includes several affidavits, Plaintiff's medical records, and other prison records. These documents reflect that at approximately 9:00 a.m. on October 15, 2012, Keeton, who was assigned as a roving guard in "D" Dorm, completed a random search of Plaintiff's living area. Shortly thereafter, Plaintiff approached Keeton, who was then conducting a random search of another inmate's living area. Plaintiff stood up from his wheelchair and swung his walking cane at Keeton, striking the upper bed rail next to the officer's head. Keeton grabbed the cane from Plaintiff and walked away. Plaintiff then left the area only to return a short time later with a cup of shaving powder. Keeton then exited the dorm and notified Sergeant Joseph Danzey ("Danzey") of the incident with Plaintiff. At approximately 9:10 a.m., Danzey and Keeton returned to the dorm to

---

[2] The Fourteenth Amendment offers both procedural and substantive protections to citizens by ensuring that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. While Plaintiff claims Keeton's actions violated both his Eighth and Fourteenth Amendment rights, his excessive force claim is properly analyzed solely under the Eighth Amendment.

escort Plaintiff to the Shift Commander's Office, where Danzey questioned him about the incident. Plaintiff admitted he swung his cane at Keeton but said he did not try to hit the officer. He maintained he swung his cane in anger because Keeton searched him earlier that morning and confiscated his gloves. Notably, he did not mention suffering any injuries as a result of the incident. Danzey reprimanded Plaintiff regarding his behavior. Plaintiff was re-assigned to a restricted-privileges dorm pending disciplinary action for disorderly conduct. Doc. 9, Exh. 2 at 1, Exh. 3, Exh. 4 at 1, 2, 4, 7.

Shortly after the incident with Keeton, Plaintiff was escorted to the infirmary for a physical examination and the preparation of a body chart. At this time, he complained to medical personnel that he had pain in his right ring finger from hitting it on the rail of a bed. Medical staff noted puffiness but no bruising to Plaintiff's finger, and scratches on his lower back. Plaintiff voiced no other complaints. Medical personnel noted that x-rays for Plaintiff's fingers would be ordered. Doc. 9, Exh 2 at 2, Exh. 4 at 8.

Plaintiff's complaint is short on facts. He describes the October 15, 2012 incident with Keeton simply as a "brutal assault" from which he sustained a broken right ring finger. Doc. 1. In his opposition to Defendants' special report, Plaintiff claims Keeton forcefully took his walking cane away and that this was unjustified because Keeton made no attempt to ask Plaintiff for the cane prior to taking it from him. Plaintiff concedes that he used his cane to strike a bed rail next to Keeton's head but maintains that the guard's response—grabbing the cane while Plaintiff was holding it and twisting it until it fell to the floor—was "totally unnecessary." Plaintiff says he brandished his cane and struck the

5

bed in a "playful" way and his actions did not constitute a threat to the guard. He characterizes Keeton's response as "panicked." Doc. 11.

The Eighth Amendment guards against the infliction of cruel and unusual punishments. U.S. Const. amend. VIII. The protections of the Eighth Amendment are triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v Albers*, 475 U.S. 312, 319 (1986) (internal quotation omitted). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id*. at 9−10 (quoting *Whitley*, 475 U.S. at 327). The core inquiry is whether force was applied in a good-faith effort to maintain or to restore discipline, or "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7).

The court's analysis of any use of force against a prisoner turns on several factors, including: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam). While a lack of serious injury is relevant to the inquiry, "[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts." *Wilkins*, 559 U.S. at 38; *see also Nolin v. Isbell*, 207 F.3d 1253, 1257

6

(11th Cir. 2000) ("[T]he application of *de minimis* force, without more, will not support a claim for excessive force."); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (holding that the application of *de minimis* force, without more, presents no claim cognizable under the Eighth Amendment); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force.").

Defendants have presented evidence that there was a substantial need for the application of force because Plaintiff swung a walking cane at Keeton—barely missing his head and striking a bed rail instead. Both parties' filings indicate that Plaintiff's actions occurred spontaneously, negating any argument that Keeton should have first asked Plaintiff to surrender the cane before taking it by force. Defendants' evidence shows some force was required to remove the weapon from Plaintiff's possession, and that the only force applied was the amount necessary to wrest the cane from Plaintiff's grip. Finally, Defendants' evidence reflects immediate steps were taken to temper Keeton's forceful response when Keeton walked away from Plaintiff after taking the cane. Shortly thereafter, Keeton left the dorm and returned with Danzey to escort Plaintiff to the Shift Commander's office, where he was reprimanded and then taken to the infirmary for a body chart. Again, Plaintiff's medical records indicate only minor swelling but no bruising to his injured finger. Doc. 9, Exhs. 2−4.

Plaintiff maintains that x-rays taken the day after the incident with Keeton reflected his right ring finger was broken. Plaintiff further asserts that "[i]f the medical

department supports [Plaintiff's] allegation that his finger was broken by the use of force by Officer Keeton and not brused [sic] then . . . the court will [] see" that Keeton's contention that he used minimal force against Plaintiff is untrue. Doc. 11 at 3; *see also* Doc. 15.  As noted, the medical records generated shortly after the incident describe his right ring finger as having only a slightly puffy appearance.  In response, Plaintiff has not provided any evidence in the form of medical records or affidavits from medical professionals reflecting the severe injury he describes. *See* Doc. 9, Exh. 2 at 2; *Whitehead v. Burnside*, 403 Fed. App'x 401, 403 (11th Cir. 2010) (per curiam) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.").

    Nonetheless, taking Plaintiff's allegations as true and viewing the evidence in the light most favorable to him, the type of force used by Keeton—grabbing the cane from Plaintiff's hands and twisting it away from his grip—is "not of a sort repugnant to the conscience of mankind." *See Hudson*, 503 U.S. at 10 (quotation marks omitted).  Rather, the evidence before the court reflects that Keeton acted "in a good-faith effort to maintain or restore discipline" and not "maliciously or sadistically to cause harm." *See id.* at 7; *Wilkins*, 559 U.S. at 39.  The officer used a limited amount of force to regain control of the situation after Plaintiff swung a wooden cane at him.  Furthermore, "in evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment." *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987).  "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison

8

officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline.'" *McBride v. Rivers*, 170 Fed. App'x 648, 656 (11th Cir. 2006) (quoting *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991)). While this deference "'does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.'" *Ort*, 813 F.2d at 322 (quoting *Whitley*, 475 U.S. at 322). Where the only question concerns the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary"); *McBride*, 170 Fed. App'x at 657 (noting that even where correctional officers could arguably have used less force after subduing an inmate, the inmate "failed to produce evidence showing that these measures were taken maliciously and sadistically for the very purpose of causing harm") (internal quotations omitted).

Because Plaintiff engaged in conduct that could reasonably be perceived by Keeton as threatening or menacing, this conduct sufficed to establish the need for Keeton to take swift and decisive action by physically grabbing the walking cane from Plaintiff and using such force as was necessary to remove it from his hands. On the record before the court, Keeton's physical contact with Plaintiff was not excessive under the circumstances. Put another way, the evidence fails to establish either (1) that Keeton used any force in excess of that which was necessary to restore control over Plaintiff, or

(2) that he used force maliciously and sadistically for the purpose of causing harm.  In light of the foregoing, the court finds Defendant Keeton is due to be granted summary judgment on Plaintiff's Eighth Amendment excessive force claim.

### B. Respondeat Superior

Plaintiff seeks to hold Defendants Danzey, White, Seals, Mitchell, and Hetzel accountable for Keeton's conduct based on their alleged supervisory positions, but this claim entitles him to no relief. *See* Doc. 11 & 15.  Supervisory personnel cannot be liable under 42 U.S.C. § 1983 for the actions of their subordinates under a theory of *respondeat superior*. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990).  Instead, a plaintiff must show that the supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. . . . The deprivations that constitute widespread abuse sufficient to notify supervising officials must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

Here, Plaintiff asserts in vague and conclusory fashion that Defendants Danzey, White, Seals, Mitchell, and Hetzel had prior knowledge of Keeton's "history of violent confrontations with several other inmates" and did nothing to protect him. Doc. 11 at 4;

*see also* Doc. 15 at 2. Plaintiff's generalized assertion in this regard, however, is insufficient to establish the requisite causal connection even if he had a viable claim against Keeton. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting a complaint does not satisfy either Fed. R. Civ. P. 8 or Fed. R. Civ. P. 12(b)(6) if it only "tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007)). Plaintiff's allegations also fail to indicate that these Defendants were personally involved in the alleged constitutional deprivation about which he complains. Without more, Defendants' motion for summary judgment on Plaintiff's *respondeat superior* claim is due to be granted.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 9) be GRANTED;

2. This case be DISMISSED with prejudice;

3. Judgment be ENTERED in favor of Defendants;

4. Costs be taxed against Plaintiff.

It is further ORDERED that **on or before March 22, 2016**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive, or general objections will not be considered by the district Court. The parties are advised that this Recommendation is not a final order, and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the district court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit Court of Appeals that were handed down prior to the close of business on September 30, 1981).

DONE this 8th day of March, 2016.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE